IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MICHAEL A.J. MAYS, )
)
        Plaintiff, )
)
vs. ) Case No. 16-cv-1307-SMY-RJD
)
ILLINOIS DEPARTMENT OF )
CORRECTIONS, et al., )
)
        Defendants.

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Michael Mays, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). Specifically, Mays alleges that Officer Evans verbally harassed and physically assaulted him on December 14, 2015. Mays was allowed to amend his Complaint and currently proceeds on the following Counts:

    Count One:    First Amendment retaliation claim against Defendant Evans;

    Count Two:    Eighth Amendment excessive force claim against Defendant Evans;

    Count Three:    Eighth Amendment failure to protect claim against Defendant Olson;

    Count Four:    Eighth Amendment deliberate indifference claim against Defendant Olson;

    Count Five:    Eighth Amendment failure to protect claim against Defendant Butler;

    Count Six:    State law battery claim against Defendant Evans;

    Count Seven:    State law claim for intentional infliction of emotional distress against Defendant Evans.

This matter is now before the Court on the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendants Butler and Olson (Doc. 44). Plaintiff filed a Response (Doc. 50). For the following reasons, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

### Factual Background

The following allegations are taken from Plaintiff's Amended Complaint. On December 14, 2015, after Mays finished a visit with his mother, Defendant Evans began making derogatory comments to Mays and repeatedly referred to him as "boy," which Mays took to have racial connotations. Mays took offense and requested grievance forms. He also attempted to speak to the lieutenant in Evans' presence, but the sergeant told Mays to return to his cell. After Mays was returned to his cell, Evans came to the cell and tried to goad Mays into fighting him. Evans then gave Mays a direct order to come to the front of the cell, at which time Evans physically assaulted Mays by punching him, slamming his head against the bars and scratching him.

Defendant Olson was present while Mays was attacked by Evans in his cell, and initially failed to stop the attack – only pulling Evans off of Mays once he saw that Mays was not fighting back. Mays asked Olson to take him to the healthcare unit after the attack, but Olson denied his request. He was made to wait until the next shift for medical treatment.

Mays alleges that Defendant Butler violated his constitutional rights by implementing unwritten policies and procedures that allowed correctional officers such as Evans to assault prisoners. Butler was aware of Evans' reputation for assaulting black prisoners due to his prior conduct, but she failed to take any action to prevent the assault on Mays.

Mays filed two grievances related to the assault by Evans:

**December 20, 2015:** This grievance describes the events leading up to and the assault by Evans. Mays states that when he was at his cell bars, Evans grabbed him by his shirt, pulled his

head against the bars, and hit him in the face multiple times. Evans stated that since Mays had dark eyes, they would not be able to tell if he had been hit. Evans continued to hit him on the left side of the face, calling him a nigger and bitch. Mays states in the grievance, "At this time Officer Olson, who was standing right there the whole time, pulls Evans off me, then walks away. Olson Badge #11414 was a witness to the assault." Mays requested that IDOC maintain and preserve all records relating to the December 14, 2015 attack. There is no other specific relief requested.

This grievance was sent directly to the ARB and received on December 24, 2015. Because of the nature of the allegations, the ARB reviewed the grievance on January 14, 2016 and responded that the issue was administratively handled, and that C/O Evans was no longer employed by IDOC. The grievance was denied as moot.

**February 20, 2016**: This grievance indicates that it is filed as a continuation and in conjunction with the December 20, 2015 grievance that was denied as moot. The grievance provides a brief description of the attack, including the statement that "C/O Olson #11414 instructed Evans to 'STOP' and physically pulled C/O Evans back from Inmate Mays." The grievance states that Mays is putting IDOC on notice of the continued effects of the December 14, 2015 attack. It states that Mays continues to suffer headaches, blurred vision, post-traumatic stress disorder and a sleep disorder. The relief requested is actual and punitive damages in the amount of $700,000, a transfer to a medium security facility, an assignment where he can be employed in a trade program, and immediate treatment for the blurred vision and dizziness.

The grievance was again sent directly to the ARB and received on March 2, 2016. The ARB responded on March 23, 2016, stating that Mays should see the health care unit for medical issues, that the other issues were previously addressed on January 14, 2016, and that there was no justification for additional consideration.

After a careful review of the arguments and evidence set forth in the parties' briefs regarding the issue of exhaustion, the Court has determined that an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008) is not necessary.

### **Legal Standards**

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll

dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the Illinois Department of Corrections must first submit a written grievance to his or her institutional counselor within 60 days after the discovery of the incident, occurrence, or problem, unless certain discrete issues are being grieved. 20 ILL. ADMIN. CODE § 504.810(a). If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the Chief Administrative Officer — usually the Warden — within 2 months of receipt, "when reasonably feasible under the circumstances." *Id*. §504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.*

An inmate may appeal the decision of the Chief Administrative Officer in writing within 30 days to the Administrative Review Board for a final decision. *Id.* § 504.850(a); *see also Dole v. Chandler*, 438 F.3d 804, 806–07 (7th Cir. 2006). The ARB will submit a written report of its findings and recommendations to the Director who shall review the same and make a final determination within 6 months of receipt of the appeal. 20 ILL. ADMIN. CODE § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may also submit certain types of grievances directly to the Administrative Review Board, including grievances related to protective custody, psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

## Discussion

Defendants argue that neither of the grievances filed by Mays complained of actions by Defendants Olson and Butler. Mays acknowledges that he did not file a grievance naming Defendant Butler, but argues that because she was employed as the Warden of Menard when the assault occurred, she is liable for the actions of her staff and it was not necessary for him to file a grievance against her. The Court disagrees. Pursuant to 42 U.S.C. § 1997e(a), Mays was required to file a grievance as to any issues with Defendant Butler. Therefore, Mays failed to exhaust administrative remedies as to Defendant Butler.

Mays also argues that both of his grievances mention Defendant Olson. While the February 20, 2016 grievance mentions Olson, it does not grieve any of his actions. The only reference to Olson in the grievance is that he was responsible for pulling Evans off Mays. This statement cannot be construed as grieving Olson's actions.

However, the statements in the December 20, 2015 grievance do complain of Olson's conduct. In that grievance, Mays states that, "Officer Olson who was standing right there the whole time pulls Evans off me, then walks away." While Mays' grievance focuses primarily on the conduct of Evans, this statement is sufficient to put IDOC on notice of Mays' failure to protect complaint against Olson. Mays clearly stated that Olson was present and failed to intervene earlier during the attack. Thus, Mays exhausted his administrative remedies against Defendant Olson as to Count Three.

There was no statement in either grievance sufficient to put IDOC on notice of Mays' claim that Olson was deliberately indifferent to his medical needs. In the December 20, 2015 grievance, Mays states that Olson walked away following the attack, but he does not grieve his medical treatment or any request for medical treatment. Mays therefore failed to exhaust his administrative remedies as to Count Four.

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment Based on Exhaustion (Doc. 44) is **GRANTED** as to Counts Four and Five, and **DENIED** as to Count Three; Plaintiff's claims against Defendant Butler are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

**DATED: May 30, 2018**

s/ Staci M. Yandle  
**STACI M. YANDLE**  
**United States District Judge**